IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY A. DROSSMAN, | ) | CASE NO. 3:10-CV-1118 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JAMES G. CARR |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE McHARGH |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Shirley Drossman's ("Plaintiff" or "Drossman") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

This case has a lengthy and complex background. In May of 2000, Plaintiff applied for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income alleging that she became disabled on February 16, 2000, due to suffering from coronary artery disease, diabetes, carpal tunnel syndrome, and depression. (Tr. 586, 844). Drossman's applications for benefits were denied initially and upon reconsideration. (Tr. 39-40, 483-95). She timely requested an administrative hearing. (Tr. 50).

On June 12, 2003, Administrative Law Judge Richard C. VerWiebe ("ALJ VerWiebe") held a hearing during which Plaintiff and vocational expert, Dr. Joseph Havrenack, testified. On February 23, 2004, ALJ VerWiebe issued his written decision denying Plaintiff's applications for benefits. (Tr. 12-25). Plaintiff requested review of ALJ VerWiebe's decision from the Appeals Council, but her request was denied. Subsequently, Drossman filed an appeal to this Court.[1]

On September 13, 2005, Magistrate Judge Nancy A. Vecchiarelli ("Judge Vecchiarelli") issued a Report and Recommendation, affirming the decision of the Commissioner. (Tr. 585-602). District Judge Patricia A. Gaughan ("Judge Gaughan") accepted in part and rejected in part Judge Vecchiarelli's recommendation. (Tr. 603-10). Judge Gaughan concurred with Judge Vecchiarelli that Plaintiff had no manipulative limitations and that any failure committed by ALJ VerWiebe in considering Drossman's labor market analysis evidence was harmless error. *Id.* However, Judge Gaughan concluded that ALJ VerWiebe misconstrued the findings offered by one of Plaintiff's treating physicians, and failed to articulate a sufficient basis for partially discrediting this physician's opinion as required by *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, on November 3, 2005, Judge Gaughan ordered that the case be remanded for consideration of this issue.

Following the issuance of Judge Gaughan's order, the Appeals Council vacated the Commissioner's decision and remanded the case for further proceedings consistent with Judge Gaughan's order. (Tr. 613). Therefore, on April 18, 2006, Administrative Law Judge Morley White

---

[1]During Plaintiff's appeal process, she reapplied for Disability Insurance Benefits and Supplemental Security Income (Tr. 616). The Commissioner approved her applications and found that Drossman was disabled as of February 24, 2004, the day after ALJ VerWiebe issued his opinion (Tr. 614).

("ALJ White") presided over a second hearing.  Drossman and her attorney, Kirk Roose, were both present at the second proceeding.  On September 28, 2006, ALJ White issued an unfavorable decision, denying Plaintiff's applications for benefits.  (Tr. 562-70).  In his written opinion, ALJ White wrestled with how to properly carry out his duties in compliance with both Judge Gaughan's order and the Appeals Council's order.  (Tr. 563-66).  Relying upon Sixth Circuit case law, ALJ White concluded that his review was limited to the issues found in question by Judge Gaughan, and that he could not disturb the remainder of Judge VerWiebe's decision.  (Tr. 565).  Ultimately, ALJ White concluded that there were jobs existing in significant numbers in the national economy which Drossman could perform.  Plaintiff sought review of ALJ White's decision from the Appeals Council, but it declined to overturn ALJ White's ruling.

Again, Drossman filed an appeal with this Court.  On February 12, 2008, Magistrate Judge Vernelis Armstrong ("Judge Armstrong") issued a Report and Recommendation, finding that remand was warranted.  (Tr. 873-89).  On April 17, 2008, District Judge James Carr ("Judge Carr") adopted Judge Armstrong's Report and Recommendation and remanded the case to the Commissioner for further proceedings consistent with his order.  (Tr. 860-72).  Judge Carr ruled that ALJ White's decision was erroneous for two reasons.  First, Judge Carr noted that ALJ White relied upon a faulty conclusion reached in ALJ VerWiebe's opinion.  ALJ VerWiebe concluded that Drossman could only perform unskilled work which consisted of one and two-step processes.  (Tr. 21).  Yet, the unskilled jobs which the VE and the ALJ listed as being available to an individual with this limitation (microfilm document preparer, surveillance system monitor, and charge account clerk), involved more than one and two-step processes according to the Dictionary of Occupational Titles.  (Tr. 868).  Thus, because ALJ White's decision also found that Plaintiff was limited to one and two-

3

step process jobs, his identification of these same jobs (microfilm document preparer, surveillance system monitor, and charge account clerk) did not carry his burden at step five of the sequential evaluation analysis.[2]  Second, Judge Carr ruled that ALJ White misinterpreted the Sixth Circuit's opinion in *Hollins v. Massanari*, 49 F. App'x 533 (6th Cir. 2002), and constricted his review of the record too greatly.  (Tr. 868-71).  ALJ White was free to examine any issues related to Plaintiff's claim, save those issues specifically resolved by Judge Gaughan – plaintiff's hand limitation and ALJ VerWiebe's consideration of Drossman's labor market analysis evidence.  *Id.*  Although Plaintiff requested Judge Carr to directly grant benefits in lieu of remanding the case back to the Commissioner, Judge Carr declined Plaintiff's request ruling that plaintiff could still be ineligible

---

[2]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

for benefits if there were jobs involving one and two-step processes existing in significant numbers in the national economy. (Tr. 871).

Finally, on January 8, 2009, Plaintiff appeared with counsel and testified at a hearing held via video before Administrative Law Judge Deirdre Horton (the "ALJ" or "ALJ Horton"). (Tr. 999-1037). Plaintiff and counsel appeared in Toledo, Ohio and ALJ Horton presided over the hearing from New Haven, Connecticut. Vocational expert, Mr. Charles McBee, also testified at the hearing. On March 31, 2009, the ALJ issued an unfavorable decision, in which she applied the five step sequential evaluation, and determined that Plaintiff had not established that she suffered from a medically determined impairment during the closed period in question, and therefore was not disabled. (Tr. 844–56). Drossman again requested review of the ALJ's decision from the Appeals Council, but it declined to assume jurisdiction. (Tr. 834-36), thereby making ALJ Horton's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of this - the Commissioner's third decision relating to Drossman's benefits applications filed in 2000.

Plaintiff, born on March 15, 1958, was forty-one years old as of her alleged onset date, which is defined as a your individual for Social Security purposes. (Tr. 16). *See* 20 C.F.R. § 404.1563(c). She completed high school and took vocational courses in computer systems. (Tr. 1006). Drossman also has past experience working as a retail sales clerk, assistant manager, loader/unloader, and a vending machine attendant. (Tr. 1014).

## II. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial

5

gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

After completing a review of the record, ALJ Deirdre Horton determined that Drossman was not disabled under the Social Security regulations. (Tr. 844-56). At step one of the sequential evaluation analysis, the ALJ found that Drossman had not engaged in substantial gainful activity since her alleged onset date of February 16, 2000. (Tr. 847). At step two, ALJ Horton ruled that Plaintiff suffered from the following severe impairments: coronary artery disease with class II angina and status post myocardial infarction with angioplasty and stenting, hypertension, hyperlipidemia, insulin dependent diabetes mellitus with diabetic neuropathy, obesity, mild carpal tunnel syndrome and depression. *Id.* However, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 847-49). Before moving to step four, the ALJ found that Drossman retained the RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except including lifting/carrying up to 10 pounds occasionally; sitting up to 6 hours and standing/walking up to 2 hours in an 8-hour workday with the ability to alternately sit or stand at will (i.e., a sit/stand option); no constant use of the hands; and limited to unskilled work defined as simple 1-2 step instructions with no sustained concentration greater than one hour at a time[.]

(Tr. 849). At step four, ALJ Horton determined that Plaintiff could not perform any of her past work (Tr. 854). Lastly, the ALJ ruled that Plaintiff's RFC allowed her to perform other jobs which existed in significant numbers in the national economy. (Tr. 855). Specifically, the ALJ held that Drossman could work as a dowel inspector, lens setter, or a waxer of glass products, and therefore, was not disabled. *Id.*

7

Plaintiff challenges the ALJ's decision on several grounds, most of which challenge the ALJ's reliance upon the VE's testimony. First, Drossman argues that the hypothetical question the ALJ posed to the VE regarding Plaintiff's need for a sit/stand option was ambiguous. Second, Drossman contends that ALJ Horton failed to obtain a reasonable explanation for the conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Third, Plaintiff attacks the ALJ's reliance upon the job incidences for the three occupations which the VE identified as amenable to Plaintiff's RFC. Fourth, Plaintiff contests the ALJ's assessment of the evidence submitted after her hearing. Fifth, Pitts maintains that ALJ Horton imposed a more stringent burden of persuasion on Plaintiff than required under the applicable regulations. Finally, Plaintiff claims that should the Court determine that ALJ Horton's decision was not supported by substantial evidence, it should not remand the case back to the Social Security Administration for readjudication, but rather should immediately direct an award of benefits.

### A. Sit/Stand Option

Plaintiff first argues that ALJ Horton's hypothetical question posed to the VE was inaccurate and incomplete. In describing Drossman's RFC to the VE, ALJ Horton stated that Drossman retained the ability to "sit six hours, stand and walk two hours in an eight hour day with a sit/stand option." (Tr. 1015). Plaintiff maintains that this articulation of her abilities was incomplete because the hypothetical question did not specify the frequency at which Plaintiff would need to alternate between sitting and standing. Drossman further notes that pursuant to Social Security Ruling 96-9p, ALJ Horton was required to articulate this information in her hypothetical question posed to the VE. (Pl.'s Br. at 8).

8

In response, Defendant replies that ALJ Horton's hypothetical question sufficiently described Plaintiff's need for a sit/stand option because "it is reasonable to assume that the VE understood the limitation to be of an at-will nature." (Def.'s Br. at 5). The Commissioner also argues that Plaintiff's attorney should have further questioned the VE regarding this limitation if he believed it did not address Plaintiff's needs.

Social Security Ruling 96-9p addresses the RFC requirements needed in order to perform sedentary work, and the ALJ's duties when a claimant's impairments require the individual to alternate between sitting and standing. A full range of sedentary work includes occasional standing or walking totaling approximately two hours in an eight hour workday. [SSR 96-9p](). It also necessitates sitting for roughly six hours of the workday. *[Id]().* The ruling further iterates that where a claimant needs to alternate between sitting and standing, and such a need "cannot accommodated by scheduled breaks and a lunch period, the occupational base for full range of unskilled sedentary work will be eroded." *[Id]().* Under such circumstances, the ALJ must determine the frequency of the person's need to alternate between sitting and standing to determine whether there are jobs that can accommodate the claimant's needs. Moreover, an ALJ may need to enlist the assistance of a vocational resource in making this decision. *[Id]().*

In the case *sub judice*, ALJ Horton's written opinion properly identified the frequency at which Drossman would need to alternate between sitting and standing – at-will. However, the ALJ failed to provide this information to the vocational expert. Instead, the ALJ merely stated that Plaintiff needed a sit/stand option. The Commissioner suggests that it is reasonable to assume that the VE understood the ALJ to be referring to an at-will option. Yet, Defendant has offered no facts or case law to support this contention.

Although Defendant has failed to cite case law supporting its position, the Court agrees with Defendant because several courts have found that an ALJ's silence regarding the frequency of the claimant's need to alternate between sitting and standing should be interpreted as conveying an at-will option. *See Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) ("Although the ALJ failed to specify the frequency that Williams needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at Williams's own volition."); *Young v. Comm'r of Soc. Sec.*, No. CV08-0474, 2009 WL 2827945, at *11-12 (W.D. La. Sept. 1, 2009) ("[S]ince the ALJ failed to specify a frequency, it is assumed that the 'sit/stand option' given by the ALJ was implicitly 'as needed' or 'at will.'"); *see Demyer v. Comm'r of Soc. Sec.*, No. 5:09CV14-J, 2009 WL 3710726, at *4-5 (W.D. Ky. Nov. 4, 2009) (Ruling that by definition, the ALJ's indication that the claimant could perform sedentary work of sitting up to six hours and walking up to two hours, did not mean that the claimant had to perform these exercises all at one time).

ALJ Horton's opinion makes clear that she believed that Drossman retained the ability to sit up to six hours and walk up to two hours in a workday. (Tr. 851-854). Furthermore, ALJ Horton explained that Drossman's treatment records did not support her contention that she was unable to sit, stand, and walk for prolonged periods. (Tr. 852). For example, ALJ Horton noted that Drossman's treating cardiologist, Dr. Traboulssi, noted that Drossman would be limited from lifting more than 10-15 pounds, but placed no restriction on her ability to sit, stand, or walk. (Tr. 853). The ALJ compared this finding with the information provided by Dr. Young offered in June of 2002, suggesting that Plaintiff was restricted from sitting longer than two hours or standing/walking more than one to two hours. *Id.* ALJ Horton commented that Dr. Young's restrictions were only expected

to last between 30 days and nine months. *Id.* Thus, based upon her review of the record, the ALJ concluded that Plaintiff could perform a range of sedentary work. As the *Williams* court noted, Plaintiff has not come forward with any evidence explaining why she could not perform the jobs identified by the VE based upon her ability to stand or sit. *Williams*, 140 F. App'x at 937. Additionally, Plaintiff's counsel could have questioned the VE regarding the impact of the sit/stand option during the hearing. *See Young*, 2009 WL 2827945, at *12.[3] Finally, the Court notes that "[n]o principle of administrative law or common sens requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that remand might lead to a different result." *Schmidt-Ress v. Astrue*, No. 4:09-CV-1502, WL 2010 WL 1258015, at *8 (N.D. Ohio Mar. 30, 2010) (White, J.) (*citing Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). For the foregoing reasons, the Court finds that the ALJ's articulation of Plaintiff's sit-stand option was legally sufficient.

### B. Conflict Between VE's Testimony and DOT

Next, Plaintiff asserts that the ALJ did not seek a reasonable explanation from the VE for the inconsistencies between his testimony and the DOT. Plaintiff maintains that there are two main areas where the VE's testimony contradicted information listed with the DOT. First, Drossman argues that the VE's description of the job requirements for the position of a lens setter optical differed from the occupational information listed in the DOT. Second, Plaintiff contends that the VE's identification of jobs permitting a sit/stand option also conflicts with the DOT.

---

[3]The Court notes that neither of the two ALJ's which reviewed Plaintiff's applications prior to ALJ Horton clarified the frequency at which Plaintiff would need to alternate between sitting and standing; instead, both ALJs merely stated that Plaintiff required a sit/stand option. (Tr. 21, 567). Yet, Plaintiff never challenged either of their findings on this ground.

Before an ALJ may rely on information provided by the VE, the ALJ must identify whether the VE's testimony conflicts with information listed in the DOT, and if so, the ALJ must seek a reasonable explanation for the conflict from the VE, and explain the resolution of such conflict in his/her written decision. SSR 00-4p. In the case *sub judice*, ALJ Horton failed to question the VE about whether his testimony was consistent with the DOT. However, this failure was rendered moot when Plaintiff's counsel questioned the VE regarding this issue during his cross-examination of the VE. In response, the VE confirmed that his testimony was consistent with the DOT and its companion publication. (Tr. 1017).

Drossman purports that the VE's description of the job duties assigned to the position of a lens setter are inconsistent with the DOT's description of this occupation. During the hearing, the VE testified that an individual with Plaintiff's RFC could work as an optical lens setter, classified under DOT code 713.687-026. (Tr. 1015).[4] The DOT states that a lens inserter "[f]its lenses into plastic sunglass frames and places frames on [a] conveyor belt that passes under heat lamps which soften frames preparatory to setting of lenses." DICOT 713.687-026. The job is classified as a sedentary unskilled position.

During the hearing, Plaintiff's counsel questioned the VE regarding the duties of a lens setter. Counsel challenged whether the occupation of a lens setter still existed within the United States job market. (Tr. 1033-34). In answering counsel's question, the VE responded that he recently purchased a pair of glasses and observed a person performing duties consistent with that of a lens setter. *Id.* The VE also stated that this person helped adjust his glasses on his face.

---

[4]The DOT refers to this position as a "lens inserter" rather than as a lens setter, as labeled by the VE. DICOT 713.687-026.

Drossman now attacks the ALJ's reliance on the VE's identification of this position, because of the VE's testimony suggesting that the position of a lens setter requires the ability to fit lenses on a person's face, and thus, actively interact with customers.

Plaintiff's argument is not well-taken and is a mischaracterization of the VE's testimony. A full review of the VE's testimony shows that he did not include customer interaction as part of the duties of a lens setter. To the contrary, he clarified the duties of such a position stating that this person is "merely setting lenses into a frame[, t]hat's what I'm talking about." (Tr. 1035). The VE's reference to the retail associate who adjusted the frames on his face was merely in response to Plaintiff's counsel's suggestion that the lens setter position no longer existed in the United States. The VE resolved any ambiguity regarding whether the position of a lens setter involved customer interaction by noting that a position involving fitting frames onto a customer's face would fall under a different DOT title. *Id.*

Plaintiff's remaining arguments challenging the VE's description of this position are also without merit. Finding that the position does not involve fitting glasses onto customers' faces, there is no need for the Court to address whether this position offers an at-will sit/stand option, as Plaintiff's argument was based upon the assumption that the lens setter position involved customer interaction. Finally, the undersigned rejects Drossman's argument that the ALJ's decision was deficient because ALJ Horton failed to obtain a reasonable explanation for why the VE referenced this position as working with eye glasses, while the DOT specifically references sunglasses. Even if this was error, Plaintiff has not described how such an error harmed her, neither can the undersigned conceive any greater burden put on Drossman by working with eye glasses instead of sun glasses.

Second, Plaintiff argues that as a matter of law, identification of an unskilled sedentary position with a sit/stand option is inconsistent with the DOT. (Pl.'s Br. at 14). Notably, Plaintiff does not cite any case law supporting this contention. The Sixth Circuit and other districts in this circuit have ruled that while the DOT does not explicitly refer to sit/stand options, a vocational expert's opinion regarding such options are not contradictory to the DOT, because the VE's opinions are based upon his/her personal experience and knowledge. *See Walton v. Comm'r of Soc. Sec.*, No. 08-13273, 2009 WL 2905952, at *9 (E.D. Mich. Sept. 8, 2009) ("[B]y testifying as to the frequency of jobs providing a sit/stand option, it appears as though the VE was supplementing information in the DOT, and not providing conflicting information."); *see also Baranich v. Barnhart*, 128 F. App'x 481, 486, n.3 (6th Cir. 2005); *Jones v. Soc. Sec. Admin.*, No. 3:09-0951, 2011 WL 766974, at *8 (M.D. Tenn. Feb. 25, 2011); *Bennett v. Astrue*, No. 5:07cv38-J, 2008 WL 345523, at *6 (W.D. Ky. Feb. 7, 2008). Furthermore, if Plaintiff's counsel believed that there was a conflict between the VE's identification of jobs with a sit/stand option and the DOT, he should have raised these issues during the hearing. *Bennett*, 2008 WL 345523, at *6. Finding that there was no conflict between the VE's testimony and the DOT, the ALJ's failure to question the VE regarding any possible conflict with the DOT was harmless error. *Bratton v. Comm'r of Soc. Sec.*, No. 2:06-0075, 2010 WL 2901856, at *4 (M.D. Tenn. July 19, 2010).

### C. VE's Job Incidence Figures

Drossman's next two assignments of error are intertwined, therefore, the Court will address them together. Initially, Plaintiff challenges the ALJ's reliance upon the VE's statement of the job incidences of the three occupations which the VE indicated Plaintiff could perform. Additionally, Plaintiff argues that ALJ Horton erroneously rejected the post-hearing evidence that Plaintiff

14

submitted challenging the VE's calculations. Essentially, Plaintiff is contesting the VE's estimation of jobs available to Plaintiff.

During the hearing, Plaintiff's counsel adamantly questioned the VE regarding the basis of his job incidence figures articulated to the ALJ. (Tr. 1017-37). At the close of the hearing, Drossman submitted additional evidence to the ALJ, including reports from a program called Job Browser Pro. Plaintiff contends that this additional evidence shows that the VE's job incidence figures were based on groups of occupations, rather than on any one particular occupation. For example, the VE indicated that there were between 225 and 250 dowel inspector occupations in Ohio. However, during cross-examination of the VE, Plaintiff's counsel argued that this figure was actually based on the job incidence of 28 different occupations identified in the DOT (Tr. 1022-24). In support of this argument, Plaintiff submitted reports from Job Browser Pro appearing to confirm Plaintiff's contentions. Accordingly, Drossman maintains that the ALJ should not have relied upon the VE's testimony regarding the job incidence figures and should have credited Plaintiff's post-hearing evidence.

The undersigned declines to rule in Plaintiff's favor on this issue. ALJ Horton listed several legitimate reasons for crediting the testimony of the VE, and the record supports her decision to do so. Despite Plaintiff's suggestion, ALJ Horton did consider Drossman's post-hearing evidence. (Tr. 855). On page 12 of her written decision, ALJ Horton openly referenced this evidence, found in exhibit B17 of the transcript. *Id.* The ALJ also specifically acknowledged Plaintiff's arguments that the jobs identified by the VE either no longer existed in the United States or didn't exist in significant numbers in Ohio or the national economy. *Id.* The ALJ also considered Plaintiff's challenge of the VE's methodology in estimating the job incidence figures. *Id.*

Although the VE confirmed that the Job Browser Pro program was a valid source of information on which he relied, the VE also indicated that he relied upon other sources of information, including collaborating with other vocational experts and comparing information with documents provided by the government. (Tr. 1021, 1025). The VE also explained that Plaintiff's counsel was misinterpreting the statistical information listed in the Job Browser Pro program. (Tr. 1023-24). Because the VE's testimony was based upon numerous sources of information, Plaintiff's attempt to undermine it based upon its inconsistencies with the figures listed in the Job Browser Pro program, is significantly weakened. Ultimately, ALJ Horton ruled that she accepted the VE's testimony because it was based upon reliable methodology. Because the record supports the ALJ's decision to credit the VE's testimony, the undersigned finds that it was proper for the ALJ to rely upon the VE's job incidence figures.

### D.  Burden of Persuasion

Next, Drossman purports that ALJ Horton applied too stringent a burden of persuasion on Plaintiff to prove her claim of disability. At one point in her decision, ALJ Horton stated that the record did not demonstrate "clear evidence of ongoing and significant signs/symptoms which would result in complete disability." (Tr. 854). Drossman asserts that this language sets forth a higher burden on Plaintiff than what is required for disability claims. Plaintiff correctly notes that the appropriate burden of persuasion before an ALJ is the "preponderance of the evidence" standard. [20 C.F.R. § 404.953(a)](#).

The Court is not persuaded by Plaintiff's argument. ALJ Horton's single reference to the lack of clear evidence supporting Plaintiff's applications does not suggest to the Court that the ALJ applied some higher burden on Plaintiff. Plaintiff has cited no other evidence supporting this

16

contention and the Court declines to assume that the ALJ made such an egregious error without more evidence illustrating this breach of her duties.

### E.  Remedy

Because the undersigned finds that the ALJ's decision was supported by the record, it is unnecessary for the Court to address Plaintiff's final argument, questioning whether an award of benefits is a more proper disposition of this case than remand.

### V.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence.   Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

>s/ Kenneth S. McHargh
>Kenneth S. McHargh
>United States Magistrate Judge

Date: July 15, 2011.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).