IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHIRLEY A. DROSSMAN,  Case No. 3:10-CV-1118

    Plaintiff

v.  ORDER

MICHAEL J. ASTRUE,
    Commissioner of Social Security,

    Defendant

In this appeal, I review defendant Commissioner of Social Security's (Commissioner) final decision denying plaintiff Shirley Drossman's claims for disability insurance benefits (DIB) under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

Drossman objects [Doc. 22] to the Magistrate Judge's Report and Recommendation (Magistrate's Report) [Doc. 19] which recommends affirming the administrative law judge's (ALJ) decision. Based on a *de novo* review of the record, I overrule Drossman's objections.

## Background

This case has a lengthy history, including previous decisions by this court.

In May, 2000, Drossman filed an application for DIB and SSI alleging she became disabled on February 16, 2000, due to coronary artery disease, diabetes, carpal tunnel syndrome, and depression. The Social Security Administration denied Drossman's applications both initially and upon reconsideration. Drossman requested an administrative hearing, which was held on June 12, 2003. Adminstrative Law Judge Richard C. VerWiebe issued his decision on February 23, 2004, denying Drossman's applications for benefits.[1]

Drossman requested review of ALJ VerWiebe's decision, but the Appeals Council denied Drossman's request. Drossman then filed an appeal to this court.

On September 13, 2005, Magistrate Judge Nancy A. Vecchiarelli issued a Report and Recommendation to affirm the decision of the Commissioner. On November 3, 2005, District Judge Patricia Gaughan accepted and rejected parts of Magistrate Judge Vecchiarelli's recommendation, remanding the case for further consideration in light of ALJ VerWiebe's failure to articulate a sufficient basis for partially discrediting a treating physician's testimony (as required by *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).

In response to Judge Gaughan's order, the Appeals Council vacated the previous decision and ALJ Morley White subsequently reconsidered the case. On September 28, 2006, ALJ White denied Drossman's applications for benefits after concluding that his review was limited to the issues challenged in Judge Gaughan's decision.

Drossman requested review of ALJ White's decision, but the Appeals Council denied Drossman's request. Drossman then again filed an appeal to this court.

---

[1] During Drossman's appeal process, she reapplied for DIB and SSI. The Commissioner approved her applications and found that she was disabled as of February 24, 2004. The current appeal is only for the time period between her initial application on February 16, 2000 and February 23, 2004.

On February 12, 2008, Magistrate Judge Vernelis Armstrong issued a Report and Recommendation that the matter be remanded.

I adopted Magistrate Judge's Report and Recommendation and remanded the case for further consideration on two grounds: first, that ALJ White improperly found that Drossman could perform certain unskilled jobs when the positions were above Drossman's level (as determined by ALJ White); second, that ALJ White unduly constricted his review of the record by refusing to consider issues beyond those which Judge Gaughan considered.  Although Drossman requested an immediate grant of benefits in lieu of remanding the case back to the Commission, I declined on the grounds that Drossman could still be ineligible for benefits if there were jobs in significant numbers in the national economy, at Drossman's level.

On March 31, 2009, ALJ Deirdre Horton denied Drossman's applications for benefits after determining that Drossman was not impaired during the period in question, and jobs existed in significant numbers in the national economy that Drossman could perform. Drossman requested review of ALJ Horton's decision, but the Appeals Council denied Drossman's request. Drossman then, for the third time, filed an appeal to this court.

**Standard for Disability**

The standard for disability under both the DIB and SSI programs is substantially similar. 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920. To determine disability, the ALJ engages in a sequential, five-step evaluative process. The ALJ considers whether: 1) the claimant is engaged in work that constitutes substantial gainful activity; 2) the claimant is severely impaired; 3) the claimant's impairment meets or equals the Secretary's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1; 4) claimant can perform past relevant work; and 5) other jobs exist in significant numbers to accommodate claimant if claimant cannot perform his past relevant work, given his

residual functional capacity (RFC), age, education and past work experience. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. *Id.* at § 404.1520(a)(4).

## ALJ Findings

The ALJ made the following findings:

> 1) Drossman met the insured status requirements of the SSA through December 31, 2005;
>
> 2) Drossman had not engaged in substantial gainful activity during the relevant time period;
>
> 3) Drossman had the following severe impairments: coronary artery disease with class II angina and status post myocardial infarction with angioplasty and stenting; hypertension; hyperlipidemia; insulin dependent diabetes mellitus with diabetic neuropathy; obesity; mild carpal tunnel syndrome and depression;
>
> 4) Drossman's impairments did not meet or medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925, and 416.926);
>
> 5) Drossman had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except including lifting/carrying up to 10 pounds occasionally; sitting up to 6 hours and standing/walking up to 2 hours in an 8-hour workday with the ability to alternately sit or stand at will (i.e., a sit/stand option); no constant use of the hands; limited to unskilled work defined as simple one- to two-step instructions with no sustained concentration greater than one hour at a time;
>
> 6) Drossman was unable to perform any past relevant work (20 CFR 404.1565 and 416.965);
>
> 7) Drossman was born on March 15, 1958 and was forty-one years old on the alleged disability onset date, defining her as a "younger individual";
>
> 8) Drossman has at least a high school education and is able to communicate in English;
>
> 9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Drossman is "not disabled," whether or not Drossman has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);
>
> 10) Considering Drossman's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.696a);

     11) Drossman was not under a disability, as defined by SSA, from February 16, 2000 to February 23, 2004

In conclusion, the ALJ found that Drossman was not disabled under §§ 216(i), 223(d), or 1614(a)(3)(A) of the SSA. [R. at 847-56]. Magistrate Judge Kenneth S. McHargh filed a Report and Recommendation confirming the agency's decision. Drossman has filed timely objections to the Report and Recommendation.

## Standard of Review

When reviewing the Magistrate's Report, I make a *de novo* determination regarding the portions to which Drossman objects. *See* 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's decision, I must determine whether substantial evidence supports the ALJ's findings, and whether the ALJ applied the proper legal standards. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I "may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently. 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, *supra*, 889 F.2d at 681 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, I view the record as a whole, *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record

suggesting otherwise. *See Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

## Discussion

The Magistrate Judge recommends I affirm the decision of the Commissioner because substantial evidence supports the ALJ's determinations, notwithstanding Drossman's arguments that the ALJ: 1) posed an ambiguous hypothetical question to the VE as to Drossman's need for a sit/stand option; 2) failed to obtain a reasonable explanation for the conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT); 3) improperly relied on VE's testimony regarding job incidence data; and 4) failed to assess evidence Drossman submitted after her hearing.[2]

Drossman claims the Magistrate Judge relied on improper *post hoc* rationalizations and misstated Drossman's arguments when he determined that substantial evidence supported the ALJ's findings.

### 1. Hypothetical Question

Drossman argued that the ALJ's hypothetical question about Drossman's RFC should have explicitly stated that Drossman required the ability to sit or stand at her discretion, and not just at scheduled breaks. The Magistrate Judge rejected Drossman's contention that the ALJ's hypothetical question to the VE was inaccurate and incomplete, finding that by stating "sit/stand option," it was sufficiently clear that Drossman should have the ability to exercise that option at her discretion.

Hypothetical questions are used in the fifth step of the evaluative process, when the burden of proof shifts to the Commissioner. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 836

---

[2] The Magistrate Judge combined consideration of errors 3 and 4 as they concern the same finding by the ALJ, and I will do the same.

(6th Cir. 2006). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.' " *Id.* (citation omitted).

If the Commissioner seeks to rely on VE testimony to prove the existence of a substantial number of jobs that a claimant can perform, the VE must give his or her testimony in response to a hypothetical question that accurately describes the claimant in all significant, relevant aspects. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do.").

A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists that a claimant can perform. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010) (listing cases). The Social Security Administration has ruled that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185 *7.

Here, the ALJ relied on the VE's testimony in response to the hypothetical detailing Drossman's RFC: "Now if we [are] to assume an individual such as the claimant who has  . . . the physical ability to  . . .  sit six hours, stand and walk two hours in an eight hour day with a sit/stand option." [R. at 1014-15]. Drossman's argument that the ALJ's failure to include the words "at-will" made the hypothetical necessarily ambiguous did not persuade the Magistrate Judge. Noting the way several other courts have ruled on this very issue, the Magistrate concluded that "at-will" could be implied. *See, e.g., Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005)

("Although the ALJ failed to specify the frequency that Williams needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at Williams's own volition.") (unpublished disposition).

Drossman makes several objections to the Magistrate Judge's conclusion. Drossman argues that the Magistrate inverted the burden of production by citing Drossman's failure to question the VE regarding the sit/stand option during the hearing. Drossman misconstrues the Magistrate Judge's decision: although the burden of production is firmly on the Commission at the fifth step of the evaluative process, the burden of persuasion that the plaintiff is disabled ultimately remains with the plaintiff. 68 FR 51153-01, 51155, 2003 WL 22001943 ("As required by the Act, the ultimate burden of persuasion to prove disability . . . remains with [the plaintiff].").

Drossman also argues that the Magistrate Judge attacked the ALJ's at-will finding in the determination of Drossman's RFC. This is incorrect. The ALJ properly and after relying on substantial evidence found that Drossman required an at-will sit/stand option. [R. at 849-54]. The Magistrate Judge's discussion of the evidence upon which the ALJ relied in making this determination only underlines this point, and does not dispute the ALJ's finding.

## 2. Conflict Between VE's Testimony and DOT

Drossman asserted that the ALJ did not seek a reasonable explanation from the VE for the inconsistencies between his testimony and the Dictionary of Occupational Titles (DOT). According to Drossman, there are two instances of inconsistency: the VE's description of the job requirements for the position of optical lens setter, and the VE's identification of jobs permitting a sit/stand option. The Magistrate Judge found that an explanation was unnecessary as there were no material inconsistencies between the VE's testimony and the DOT. [R. at 12-14].

Prior to relying on testimony from a VE, the ALJ must determine whether the VE's testimony conflicts with the DOT; if there is a conflict, the ALJ must obtain a reasonable explanation for the conflict during testimony, and present the resolution in her decision. SSR 00-4p. In this case, the ALJ failed to ask the VE whether there was any conflict between his testimony and the DOT. However, as the Magistrate Judge noted, the "failure was rendered moot" when Drossman's counsel asked about any conflicts upon cross-examination of the VE. [R. at 1017]. The VE stated that his testimony was consistent with the DOT. *Id.* The ALJ noted this testimony of consistency in the ALJ's decision. [R. at 855].

Drossman argues that there is an inconsistency between the description of an optical lens setter which the VE gave, and how the DOT describes it. During the hearing, the VE testified that an individual with Drossman's RFC could work as an optical lens setter, classified under DOT 713.687-026. [R. at 1015].[3] The DOT states that a lens inserter "[f]its lenses into plastic sunglass frames and places frames on [a] conveyor belt that passes under heat lamps which soften frames preparatory to setting of lenses." DOT 713.687-026. The job is classified as a sedentary unskilled position. During the hearing, Drossman's counsel questioned the VE as to whether he had personal knowledge or had personally observed a person engaged in lens setting work. [R. at 1033-34]. The VE testified that he had observed someone doing similar work with eyeglasses, but maintained the job incidence data with respect to sunglasses, as described in the DOT. *Id.* Drossman maintains that when the VE described this individual, he added duties to the position, including customer interaction; additionally, that the VE failed to notice the difference between working with plastic sunglasses and eyeglasses.

---

[3] The DOT refers to this position as a "lens inserter" rather than as an "optical lens setter", as stated by the VE. Drossman has not objected to this inconsistency, and it does not appear to be material.

The Magistrate Judge properly dismissed this as a mischaracterization of the VE's testimony. The VE explained the difference between the position he had personally observed, and the position he pointed to in response to the ALJ's hypothetical. [R. at 1035]. The VE did not add customer interaction to the job description of optical lens setter, and the VE clarified this in his testimony. *Id.*

Drossman next argued that the VE's identification of unskilled sedentary positions with a sit/stand option was inconsistent with the DOT. Drossman is correct that there is no reference to a sit/stand option in the DOT. However, as the Magistrate Judge noted, multiple courts have held that the DOT cannot and should not be the sole source of the VE's testimony; the VE should also testify to his personal experience and knowledge, supplementing what can be found in the DOT. *See, e.g., Baranich v. Barnhart*, 128 F. App'x 481, 486 n. 3 (6th Cir. 2005) (unpublished disposition); *Jones v. Soc. Sec. Admin*, 2011 WL 766974, at *8 (M.D. Tenn. Feb. 25) (". . . it is plainly within the vocational expert's realm to offer an opinion, based on personal experience and review of other sources, as to the availability of jobs identified in the [DOT] and capable of allowing the option to sit or stand at will, even though the DOT does not itself recognize any particular job's amenability to a sit/stand option as such. It has been held that no conflict between the testimony of the expert and the DOT is created by the mere imposition of a sit/stand option, such that would require resolution by the ALJ in order to pass muster.") (internal citations omitted).

### 3. Credibility of VE's Testimony and Post-Hearing Evidence

Drossman challenged the ALJ's reliance on the VE's testimony regarding the job incidence numbers of the three positions the VE identified as fitting Drossman's RFC. Drossman also asserted that the ALJ failed to consider the evidence Drossman submitted to the ALJ after the hearing. The Magistrate Judge found that there was sufficient evidence for the ALJ's conclusions, and that the ALJ did consider the post-hearing evidence in making the final determination.

Drossman objects to the Magistrate's finding that the ALJ adequately considered all the testimony and Drossman's post-hearing evidence in arriving at a decision backed by substantial evidence. I disagree, and concur with the Magistrate's findings.

At the hearing, Drossman's counsel questioned the VE extensively regarding the data the VE relied on in finding his job incidence figures. [R. at 1017-31]. Drossman's counsel questioned the VE's methodology and the software he used. He also brought additional evidence from the computer program Job Browser Pro to the VE's attention. *Id.*

Drossman argues this evidence shows the VE relied on groups of occupations in finding the job incidence figures, rather than on individual occupations. Drossman submitted reports from Job Browser Pro to support this contention. The Magistrate Judge found that the ALJ considered the evidence Drossman submitted after the hearing, [R. at 815], but the ALJ decided nonetheless to credit the VE's testimony. He cited the fact that the VE did not rely solely on the Job Browser Pro software but also consulted with other vocational experts and sources of data used by other vocational experts. *Id.* There is substantial evidence in the record to support the ALJ's findings.

### 4. Remedy

It is not necessary to address Drossman's arguments for an immediate grant of benefits rather than remand, as I have determined that remand is not the proper disposition for the case.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Plaintiff Shirley Drossman's objections to the Report and Recommendation of the United States Magistrate Judge be, and the same hereby are, overruled; and

2. The Report and Recommendation of the United States Magistrate Judge be, and the same hereby is adopted, with judgment to enter in favor of the defendant.

So ordered.

s/James G. Carr  
James G. Carr  
Sr. United States District Judge